# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ZAKKERY A. HAMILTON,**

        **Plaintiff,**

**-vs-**                                                          **Case No. 6:08-cv-677-Orl-28DAB**

**EMBARQ MANAGEMENT COMPANY,**

        **Defendant.**

_____

# ORDER

This cause is before the Court on the Motion for Partial Summary Judgment (Doc. 25) filed by Defendant, Embarq Management Company ("Embarq"). Plaintiff, Zakkery A. Hamilton ("Hamilton"), has filed a Response (Doc. 34) in opposition, and the matter is now ripe for adjudication. After careful review of the record and arguments of the parties, the Court finds that Embarq's motion must be granted.

## I. Procedural Background

On April 28, 2008, Hamilton filed a single-count complaint against Embarq, his former employer Embarq alleging violations of the Fair Labor Standards Act ("FLSA"). (Compl.). Hamilton alleges that Embarq "repeatedly and willfully violated Section 7 and Section 15 of the [FLSA] by failing to compensate Plaintiff at a rate not less than one and one-half times the regular rate at which he was employed for workweeks longer than forty (40) hours." (Compl. ¶ 11). Specifically, Hamilton claims that he "worked numerous weeks in excess of forty (40) hours a week, yet was not compensated for all work in excess of forty (40) hours

at a rate not less than one and one-half times the regular rate at which she [sic] was employed." (Id.).

## II. Facts

Embarq is a provider of telecommunications services. Hamilton was employed in Embarq's Advanced Small Business ("ASB") group as an ASB Account Representative and later as an Inside Sales Specialist—positions in which he was responsible for selling Embarq products and services via telephone to small business customers—during the relevant period from April 2005 and his resignation on June 11, 2007. (Decl. of Michael Renard ¶¶ 4, 5). Prior to December 2005, the ASB group operated out of Embarq's Small Business Sales Center ("SBSC") located in Altmonte Springs, Florida; from December 2005 until June 2007, the ASB group moved to Embarq's National Sales Center ("NSC") in Apopka, Florida. (Id. ¶ 4).

Michael Renard ("Renard"), the Operations Manager for the NSC from late 2005 until January 2008, described the manner in which the company kept track of its employees' hours during Hamilton's employment. Embarq used an electronic system known as "IEX/Webview" or "Agent Web Station" to keep track of the times its employees worked at the SBSC. (Id. ¶ 7). This system required that employees sign in and out of the system as they commenced and ceased working during the course of the day. (Id.). Once Hamilton moved to the NSC, Embarq tracked his time in a different manner. There, Hamilton himself was responsible for reporting his hours through the use of handwritten time sheets provided to his immediate supervisors—Eric Boyle ("Boyle"), Michelle Ryan ("Ryan"), Sue Michalski, and Wanda Renee Miller—for their review. (Id. ¶¶ 4, 7).

During the relevant period, Embarq's records reflect that at times Hamilton worked in excess of forty hours per week and that Hamilton was paid for these hours. Hamilton does not dispute that he was paid for the overtime hours appearing in Embarq's records. However, he testified in his deposition that Boyle and Ryan instructed him to remove overtime hours from his time sheets prior to his turning the sheets into management unless the overtime hours had been approved prior to his working the hours.[1] (Hamilton Dep. at 64-66, 83).

In addition to requiring its employees to keep accurate records of their time worked, Renard stated that Embarq "instructs and expects supervisors to ensure employees' time is accurately kept." (Renard Decl. ¶ 8). "Failure of a supervisor to ensure employees' compliance with [Embarq's] time-keeping and overtime policies is grounds for discipline of the supervisor." (Id.). In July 2006, Renard learned that some employees had questions regarding Embarq's policy of overtime. (Id. ¶ 9). Under this policy, Embarq expected its employees to complete their work in the normal work day and to seek preapproval from their immediate supervisor if they wanted to work overtime. (Id.). In order to address the concerns of these employees, Renard distributed an email that stated:

---

[1] In Hamilton's Response, he argues that Embarq failed to properly support its summary judgment motion because Embarq did not file Hamilton's deposition at the time it filed the motion for summary judgment. The Court finds Hamilton's argument to be unavailing. Though Embarq filed a transcript of Hamilton's deposition after the expiration of the dispositive motion deadline as set forth in the Case Management Scheduling Order (Doc. 19), Plaintiff was not prejudiced by this act for several reasons. First, Embarq referred to Hamilton's deposition in its motion for summary judgment and provided pinpoint citations to the transcript. Also, Hamilton has received not one, but two, extensions of time to file his response, with one of these extensions being granted after Embarq filed the transcript. Finally, Hamilton himself cites to his deposition in his response. (Doc. 34 at 3).

> We have attempted to communicate the NSC's overtime policy to you very clearly over the years during individual staff meetings. Recent questions from some of our associates leads me to believe that I need to provide additional clarity around this subject. The general policy for overtime in the NSC is that all OT needs to be pre-approved by your immediate supervisor. Our general thought is that our associates should be able to complete their work during a normal 8 hour work day. We understand that in certain circumstances the business will require that you work overtime, but we also believe that in most cases our associates should be able to manage their work load in a way that would facilitate the approval process prior to working the OT. The obvious exception would be that you get a customer call at the end of your shift which causes you to work over your normal scheduled time.
> *With that said, I want to be perfectly clear that you need to report all time correctly on your time sheet—including overtime. Please understand that falsifying your time sheet is a very serious offense which will lead to immediate corrective action. Please also understand that under reporting time is falsifying your time sheet! If you work the hours, you need to report the time—including OT without exception.*

(Renard Email, Ex. 3 to Doc. 26 (emphasis added)).

In November 2006, Hamilton complained to Lisa Hart ("Hart"), a Human Resources Manager at Embarq, that Boyle had required him to remove overtime from his time sheets. (Hart Decl. ¶ 4). Hamilton informed Hart that "he would remove the time by whiting out the original time on his time sheets and putting new time entries over the original entries."[2] (Id.). After receiving Hamilton's complaint, Hart reviewed Hamilton's time sheets between December 2005 and July 2006—the time period when Hamilton reported to Boyle—and found no evidence of overtime being removed from the time sheets. (Id.).

---

[2]Hart's declaration is consistent with an unsigned and undated typed statement made by Hamilton in which he stated "I would make known [the overtime] was being changed by using whiteout instead of a fresh sheet." (Hamilton Statement, Ex. 3 to Doc. 31). Though the statement is not signed by Hamilton, he confirmed that the statement was his during his deposition. (Hamilton Dep. at 148-49). However, Hamilton previously asserted in his deposition that instead of whiting out his time and writing over it, Boyle would provide him a fresh time sheet to fill in his time. (Id. at 66-67).

Hamilton resigned from Embarq effective June 11, 2007 and filed his Complaint against Embarq on April 28, 2008. Embarq has now moved for partial summary judgment on Hamilton's claim, arguing that Hamilton has presented no evidence supporting his claim that Embarq "willfully" violated the FLSA and that therefore claims regarding violations occurring prior to April 28, 2006 are barred by the applicable statute of limitations. (Doc. 25 at 6-7).

### III. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "A nonmoving party, opposing a motion for summary judgment supported by affidavits [or other relevant evidence] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e)(2) (providing that the nonmovant "must . . . set out specific facts showing a genuine issue for trial").

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Some degree of factual dispute is expected, but to defeat a motion for summary judgment the factual dispute must be material and genuine. That is, the factual evidence must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## IV. Analysis

Claims seeking unpaid overtime wages under the FLSA are generally subject to a two-year statute of limitations. 29 U.S.C. § 255(a). However, this statute of limitations is extended to three years for claims "arising out of a willful violation." Id. "To establish that the violation of the [FLSA] was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162-63 (11th Cir. 2008) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). "Reckless disregard" is defined by the Code of Federal Regulations as "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104.

The Eleventh Circuit has previously refused to find "willful" behavior on the part of an employer despite strong evidence of the employer's violation of the FLSA. See Reich v. Dep't of Conservation & Natural Res., State of Ala., 28 F.3d 1076, 1084 (11th Cir. 1994). In Reich, the U.S. Secretary of Labor filed suit seeking compensation for a group of Alabama

conservation enforcement officers who allegedly worked overtime during the annual deer hunting season yet had not been compensated for it. On appeal, the Eleventh Circuit concluded that the Department possessed substantial evidence that its employees were working unreported overtime, including evidence that a least one district supervisor told employees to "get their work done but not to report over 40 hours a week." Id. at 1079-81 n.10. Despite the Department's knowledge of this behavior, however, the court refused to find that the Department's behavior constituted "willful" behavior for the purpose of determining the statute of limitations under 29 U.S.C. § 255(a). Specifically, the Reich court stated:

> The district court found that the Department's approach to unauthorized overtime changed from a pattern of acquiescence evident in 1985 to a more vigilant attitude toward its proscription in 1987. Although the Department should have done more to ameliorate the problem, it did at least attempt to address it, albeit ineffectively. We cannot say on the basis of the record before us that it showed reckless disregard for the matter of whether its conduct was prohibited. Its failure to rectify this troublesome situation can better be described as resulting from negligence rather than from willfulness.

Id. at 1084.

When assessing the present case in light of the Reich decision, even contruing the evidence in the light most favorable to Hamilton, Embarq's actions cannot be characterized as "willful." Here, Embarq did not display the level of indifference to the enforcement of the FLSA and its own policies as that displayed by the Department in Reich. Instead, the record reflects that Embarq took affirmative steps in an attempt to comply with FLSA requirements. For example, Embarq has put forth evidence showing that it considered the under reporting of overtime to be a serious offense that would lead to disciplinary action. (See Renard Email

("Please understand that falsifying your time sheet is a very serious offense which will lead to immediate corrective action. Please also understand that under reporting time is falsifying your time sheet! If you work the hours, you need to report the time—including OT without exception.")). Additionally, Embarq has shown that when presented with a complaint alleging that a supervisor instructed an employee to falsify his time sheet, the complaint was immediately investigated. (See Hart Decl. ¶ 4).

In his response to Embarq's motion, Hamilton has not come forth with specific factual evidence showing a genuine issue for trial regarding willfulness. Instead of presenting evidence supporting his allegation that Embarq's conduct constituted "willful" action, Hamilton argues that Embarq failed to establish that "there were no complaints received by [Embarq's] management through any other source or from any other employee" and that the Court could draw an "inference . . . from [Embarq's] failure to establish this fact that it did actually have knowledge from another source or employee, just not from the Plaintiff herein." (Doc. 34 at 3). Hamilton also argues that Embarq failed to establish that the Department of Labor had not investigated a report made by Hamilton or that the Department of Labor had not received complaints from other Embarq employees during the applicable time. However, the record is clear that the Department of Labor informed Hamilton that it could not investigate his report without permission to use his name—permission that Hamilton refused to grant. (Hamilton Dep. at 25-28). Additionally, Hamilton affirmatively stated in his deposition that the Department of Labor had not investigated his report. (Id. at 26 ("Q: Are you aware of whether the Department of Labor did an investigation of your complaint? A: No, they didn't. Q: They did not? A: They didn't.")).

The only evidence that Hamilton has produced to substantiate his claim that Embarq willfully disregarded the FLSA is his own deposition testimony that his immediate supervisors, Boyle and Ryan, instructed him to remove overtime from his time sheets. However, the Eleventh Circuit held in <u>Reich</u> that similar evidence was insufficient to find a "willful" violation when the defendant had made an attempt to address the problem. Embarq has shown that when presented with allegations of supervisors requiring employees to alter their time sheets, Embarq immediately investigated the complaint and found no evidence of such behavior. (<u>See</u> Hart Decl. ¶ 4). As in <u>Reich</u>, Embarq attempted to address potential problems regarding the under reporting of hours, and as such, this Court finds that the evidence does not support a finding of a "willful" violation.

Because Embarq has provided the Court with evidence reflecting its attempts to comply with the FLSA and Hamilton has not produced evidence other than his own deposition to establish that Embarq acted willfully, the Court finds that Embarq's motion must be granted. Accordingly, the two-year statute of limitations period applies and claims pertaining to alleged violations occurring prior to April 28, 2006 are time barred.

## V. Conclusion

For the aforementioned reasons, Embarq's Motion for Partial Summary Judgment

(Doc. 25) is **GRANTED**.

**DONE** and **ORDERED** in Orlando, Florida this 26th day of October, 2009.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party